UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF ALABAMA
MOBILE DIVISION

In re:

FEASTER & SONS OIL DISTRIBUTORS,                    Case No.: 09-15381-MAM
INC.,

        Debtor.

**ORDER SUSTAINING THE TRUSTEE'S OBJECTION TO PEOPLES EXCHANGE
BANK OF MONROE COUNTY'S CLAIM NUMBER 24 AND OVERRULING THE
TRUSTEE'S OBJECTION TO PEOPLES EXCHANGE BANK OF MONROE
COUNTY'S CLAIM NUMBER 25**

        Jeffery J. Hartley, Attorney for the Trustee, Mobile, Alabama
        Lonnie L. Mixon, Chapter 7 Trustee, Mobile, Alabama
        Russell S. Terry, Attorney for Peoples Exchange Bank of Monroe County, Mobile,
Alabama

This case is before the Court on the Trustee's Objections to Peoples Exchange Bank of

Monroe County's Claim No. 24 and No. 25. The Court has jurisdiction to hear this matter

pursuant to 28 U.S.C. §§ 157 and 1334 and the Order of Reference of the District Court. The

Court has the authority to enter a final order pursuant to 28 U.S.C. § 157(b)(2). For the reasons

indicated below, the Trustee's objection to Claim No. 24 is SUSTAINED IN PART and

DENIED IN PART and the Trustee's objection to Claim No. 25 is OVERRULED.

FACTS

This action is the product of two claim objections the Trustee filed with regard to Peoples

Exchange Bank of Monroe County's (the "Bank") Claim No. 24 and No. 25 filed in Debtor

Feaster & Son's Oil Distributors, Inc.'s bankruptcy case. The basis for the Trustee's objections is

that "the claim was filed as a secured claim, and there is no property of the estate to which a

security interest attaches." The parties stipulated to the following facts, which are largely taken

from the Bank's amended response to the Trustee's objections and partially gathered from representations made before this court during a hearing on September 11, 2012:

The Bank filed its Claim No. 24 in the amount of $404,902.31, based upon its loan Number *4024 to the Debtor. The Bank also claimed post-petition interest, attorneys' fees and other charges authorized by its loan documents in addition to the above amount. At the time Claim No. 24 was filed, the Bank's claim was secured by real property mortgages (referenced in its claim) upon properties located at 1549 Highway 21 Bypass in Monroeville, Alabama, (the "Bypass Property"), 1461 Highway 41, Range, Alabama, (the "Range property"), 3603 College Ave., Jackson, Alabama, (the "Jackson property") and by commercial property in Uriah, Alabama, (the "Uriah property") by virtue of cross-collateralization provisions in its loan documents. The Bank filed its Claim No. 25 in the amount of $95,117.16, based upon its loan Number *4025 to the Debtor. The same properties that secure Claim No. 24 secure Claim No. 25 based upon cross-collateralization provisions in the loan documents.

The Trustee filed a "Motion for Hearing and for an Order Authorizing Sale of Assets Free and Clear of Liens and Approving Notice of Intended Sale" on November 23, 2010, with respect to the Jackson property. The Trustee's motion provided that the sale would be free and clear of all liens and that such liens would attach to the proceeds of the sale of the property. An Order approving the Trustee's motion was entered on December 15, 2010, and an Amended Order was entered on December 28, 2010. The Court's Amended Order provided that "[T]he first lienholder, the Peoples Exchange Bank, shall be paid its allowed secured claim on the subject property (3603 College Ave., Jackson, Alabama 36545) immediately upon closing." The sale of the Jackson Property was closed on or about April 21, 2011, and the estate netted the sum of $421,000.

Case 09-15381   Doc 595   Filed 09/28/12   Entered 09/28/12 12:03:01   Desc Main
Document     Page 2 of 11

The Trustee filed a second "Motion for Hearing and for an Order Authorizing Sale of Assets Free and Clear of Liens and Approving Notice of Intended Sale" on December 8, 2010, with respect to the Bypass property. The Trustee's motion provided that the sale would be free and clear of all liens and that such liens would attach to the proceeds of the sale of the property. An Order approving the Trustee's motion was entered on January 14, 2011 and an Amended Order was entered on January 31, 2011.

The Court's Amended Order provided that "[T]he first lienholder, the Peoples Exchange Bank of Monroe County, shall be paid its allowed secured claim immediately upon closing in the aggregate fixed amount of $450,000 with respect to the subject property (1549 Highway 21 Bypass, Monroeville, Alabama 36460) and the other properties located in Jackson, Alabama, and Range, Alabama, securing the Bank's Claim No. 24, provided that the Trustee pays such sum from the proceeds of such sales on or before February 28, 2011. In the event that such sum has not been paid on or before February 28, 2011, the Bank may be entitled to such further interest and other charges which have accrued upon its Claim No. 24 subject to further order of this Court or upon which the Bank and the Trustee may agree." The sale of the Bypass property was closed on or about May 27, 2011, and the estate netted the sum of $170,000.

The Trustee filed a third "Motion for Hearing and for an Order Authorizing Sale of Assets Free and Clear of Liens and Approving Notice of Intended Sale" on December 8, 2010, with respect to the Range property. The Trustee's motion provided that the sale would be free and clear of all liens and that such liens would attach to the proceeds of the sale of the property. An Order approving the Trustee's motion was entered on January 14, 2011 and an Amended Order was entered on January 31, 2011.

Case 09-15381   Doc 595   Filed 09/28/12   Entered 09/28/12 12:03:01   Desc Main
Document    Page 3 of 11

The Court's Amended Order provided that "[T]he first lienholder, Peoples Exchange Bank of Monroe County, shall be paid its allowed secured claim immediately upon closing in the aggregate fixed amount of $450,000 with respect to the subject property (1416 Highway 41 N., Range, Alabama 36473) and the other properties located in Jackson, Alabama, and Monroeville, Alabama, securing the Bank's Claim No. 24, provided that the Trustee pays such sum from the proceeds of such sales on or before February 28, 2011. In the event that such sum has not been paid on or before February 28, 2011, the Bank may be entitled to such further interest and other charges which have accrued upon its Claim No. 24 subject to further order of this Court or upon which the Bank and the Trustee may agree." The sale of the Range property was closed on or about January 27, 2011, and the estate netted the sum of $190,000.00. The net proceeds to the estate from the sale of the Jackson property, the Bypass property and the Range property total $781,000.

The Trustee dispersed the sum of $150,000 to the Bank on or about February 4, 2011, (shortly after the closing of the Range property) and the sum of $300,000.00 on or about May 3, 2011, (shortly after the closing of the Jackson property). The Trustee's payments to the Bank with respect to its Claim No. 24 total $450,000. The balance remaining on Claim No. 24 is $12,646.34 plus attorney's fees.

The Bank's Claim No. 25 is secured by the Uriah property (which was deeded to a third party subject to the Bank's mortgage prior to the filing of bankruptcy by the Debtor) and by the three properties described above by virtue of cross-collateralization language in its loan documents. Such claim was filed in the amount of $95,117.16, but has been significantly reduced by virtue of payments made by such third-party to reduce the Bank's mortgage lien. No

4

payments have been made by the Trustee with respect to this claim. The present balance due with respect to this claim is $38,746.70 plus its attorneys' fees.

The sales of the Jackson property and the Bypass property did not close until after February 28, 2011. Although the Trustee's initial disbursement to the Bank of $150,000 was made on or about February 4, 2011, the second $300,000 disbursement was not made until May 3, 2011.

The parties stipulated that the Bank's attorney's fees related to this matter total $7,500. The parties also stipulated that the Uriah Property has a value of no less than $75,000. The Uriah Property is owned by John M. Johnson. Mr. Johnson is currently a Chapter 13 debtor and he is making payments on the indebtedness that he owes on the Uriah Property through his Chapter 13 plan. The Bank has a first position loan on the Uriah Property.

LAW

This court must decide whether the balances due on the Bank's Claim No. 24 and No. 25 are secured by the remaining proceeds of the sales of the Jackson, Bypass, and Range properties and, if so, whether the equitable doctrine of marshaling requires the Bank to look to the Uriah property for satisfaction of its claims.

The Bank filed its Claim No. 24 and No. 25 as secured by the same four properties. Three of the four properties were sold by the Trustee pursuant to three separate orders approving the sales. The Debtor's bankruptcy estate received the proceeds of the sales and the Bank has been paid $450,000 of those proceeds. The fourth property, the Uriah Property, never became property of the Debtor's estate. Thereafter, the Trustee filed an objection to both Claim No. 24 and No. 25 asserting that the Bank's claims were no longer secured and requesting disallowance

5

of both claims. The parties treated the two claims differently. This court's sale orders only discuss Claim No. 24. Therefore, the two claims will be analyzed separately.

Claim No. 24

The Trustee's objection to Claim No. 24 is due to be sustained in part and denied in part. Under 11 U.S.C. § 502(a), "[a] claim or interest, proof of which is filed under section 501 ... is deemed allowed, unless a party in interest ... objects." *In re Jacks*, 642 F.3d 1323, 1333 (11th Cir. 2011). 11 U.S.C. § 502(b)(1) directs the court to determine the amount of the claim and "shall allow such claim in such amount, except to the extent that [ ] such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured." *Id*.

Here, the parties agreed to fix the Bank's Claim No. 24. That agreement was memorialized in the orders approving the sales of the Range and Bypass properties. Those orders were entered by consent. The relevant language is as follows:

> The first lienholder, the Peoples Exchange Bank of Monroe County, shall be paid its allowed secured claim immediately upon closing in the aggregate fixed amount of $450,000.00 with respect to the subject property…and the other properties located in Jackson, Alabama and Monroeville, Alabama, securing the Bank's Claim No. 24, provided that the Trustee pays such sum from the proceeds of such sales on or before February 28, 2011. In the event such sum has not been paid on or before February 28, 2011, the Bank may be entitled to such further interest and other charges which have accrued upon its Claim No. 24 subject to further order of this Court or upon which the Bank and the Trustee may agree.

The parties disagree as to the import of this provision. The Trustee argues that the order fixed the Bank's claim at $450,000. The Bank argues that its Claim No. 24 would only be fixed if it were paid $450,000 by February 28, 2011, which it was not. The Bank did not receive the full $450,000 until May 3.

6

Courts construe the terms of consent orders much the same way they interpret contracts. *U.S. v. ITT Continental Baking Co.*, 420 U.S. 223, 237 (1975). As such, the parties' intent, as reflected in the language of the consent order, is instructive. *Schurr v. Austin Galleries of Illinois, Inc.*, 719 F.2d 571, 574 (2d Cir. 1983); *In re In re Jamesway Corp.*, 205 B.R. 32, 34-35 (Bankr. S.D.N.Y. 1996). The import of the agreed upon language in the order is clear. The Bank agreed to cap its "allowed secured claim" on its Claim No. 24 at "the aggregate fixed amount of $450,000" with respect to the four properties. The qualifying language thereafter stating "provided that the Trustee pays such sum from the proceeds of such sales on or before February 28, 2011" might undercut the agreement to fix the claim amount if not for the subsequent sentence which details the consequence of the Bank not being paid by February 28. According to the plain language of the order, the consequence of the Bank not being paid $450,000 by February 28 was not that the claim would no longer be fixed at $450,000. Instead, the consequence would be that the Bank might be entitled to additional "interest and other charges."

The Bank has been paid $450,000. Thus, the remaining balance of the Bank's Claim No. 24 is no longer secured by estate property and the Trustee's objection to Claim No. 24 is sustained to that extent. However, in line with the order, the Bank is entitled to the interest that accrued upon the unpaid balance of the $300,000 that was outstanding from February 28, 2011 through May 3, 2011 as a secured claim. The Bank calculated that amount as $4,208. Therefore, the Trustee's objection is denied in part. The Bank is also entitled to an unsecured nonpriority claim of $8,438.34, representing the remaining balance on its Claim No. 24.

## Claim No. 25

The parties stipulated that the unpaid balance due on the Bank's Claim No. 25 is $38,746.70. While the court's sale orders fixed the Bank's Claim No. 24, they did not similarly

Case 09-15381   Doc 595   Filed 09/28/12   Entered 09/28/12 12:03:01   Desc Main
Document     Page 7 of 11

limit the Bank's Claim No. 25. As such, the unpaid balance remains secured by the proceeds from the sales and the Trustee's objection to Claim No. 25 is denied. In addition, the parties stipulated that the Bank's attorney's fees related to defending the claim objections total $7,500. That amount is secured by the proceeds of the sales as well.

However, Claim No. 25 is also secured by the Uriah property. The Uriah property, which is owned by John M. Johnson, is not property of the estate. The Trustee argues that the Bank should be required to seek satisfaction of the remaining balance of its Claim No. 25 from Mr. Johnson, through foreclosure of the Uriah property or otherwise, rather than from the estate. The Trustee submits that the Uriah property is worth at least $75,000 and that the Bank could proceed with its first priority lien against the property to satisfy all of its Claim No. 25. The Trustee asserts that such a result would make the Bank whole without affecting the unsecured creditors of the Debtor. In support, the Trustee invokes the doctrine of marshaling.

Marshaling is an equitable doctrine which, in certain specific circumstances, dictates the manner in which a secured creditor with liens on multiple pieces of property must look to satisfy its debt. *Meyer v. U.S.*, 375 U.S. 233, 236-237 (1963). As stated by the United States Supreme Court in *Meyer*, "a creditor having two funds to satisfy his debt may not, by his application of them to his demand, defeat another creditor, who may resort to only one of the funds." *Id*. at 236. In Alabama, the doctrine of marshaling is codified at Ala. Code § 35-11-4 (1975). It states:

> Where one has a lien upon different things, and other persons have subordinate liens upon, or interests in, some but not all of the same things, the person having the prior lien, if he can do so without risk of loss to himself, or of injustice to other persons, must resort to the property in the following order, on the written demand of any party interested:
>
> (1) To the things upon which he has an exclusive lien;
>
> (2) To the things which are subject to the fewest subordinate liens;

Case 09-15381   Doc 595   Filed 09/28/12   Entered 09/28/12 12:03:01   Desc Main
Document     Page 8 of 11

(3) In like manner inversely to the number of subordinate liens upon the same thing; and

(4) When several things are within one of the foregoing classes, and subject to the same number of liens, resort must be had

> a. To the things which have not been transferred since the prior lien was created;

> b. To the things which have been so transferred without a valuable consideration; and

> c. To the things which have been so transferred for a valuable consideration in the inverse order of the transfer.

The following elements are necessary to justify marshaling: (1) two creditors of a common debtor, (2) two or more funds belong to that debtor, and (3) one creditor has the right to resort to either or both funds, while the other may only resort to one. *In re West Coast Optical Instruments, Inc.*, 177 B.R. 720, 721 (M.D. Fla. 1992); *In re Computer Room, Inc.*, 24 B.R. 732, 734 (Bankr. N.D. Ala. 1982); *In re San Jacinto Glass Industries, Inc.*, 93 B.R. 934, 937 (Bankr. S.D. Tex. 1988). With a nod to the Alabama statute, the bankruptcy court in *XYC Options, Inc.*, 217 B.R. 912, 921 (Bankr. N.D. Ala. 1998), added that marshaling may not cause an injustice to other persons or a risk of loss to the party being ordered to look elsewhere for satisfaction of its lien.

Here, the requisite elements for marshaling are not met. Specifically, the funds at issue are not of a common debtor. The Trustee asks this court to order the Bank to look to the Uriah property, which belongs to Mr. Johnson, rather than the proceeds of the sales that belong to the Debtor's bankruptcy estate. The common debtor requirement is a longstanding requirement of marshaling. *In re Beacon Distributors, Inc.*, 441 F.2d 547, 548 (1st Cir. 1971); *Matter of Harrold's Hatchery and Poultry Farms, Inc.*, 17 B.R. 712, 716 (Bankr. M.D. Ga. 1982). One court has called the requirement "essential to an application of the doctrine of marshaling

9

assets." *Matter of Childers*, 44 B.R. 23, 26 (Bankr. N.D. Ala. 1984). This court agrees. As a doctrine of equity, it makes sense that the funds should be owned by a common debtor in order to be marshaled because the debtor itself is not likely to be prejudiced by the distribution—the funds will be distributed either way. When a second debtor is introduced into the fact pattern, more questions arise, and the likelihood of prejudice to that party increases. *Dupage Lumber and Home Imp. Center Co., Inc. v. Georgia-Pacific Corp.*, 34 B.R. 737, 740-41 (N.D. Ill. 1983).

In this case, the lack of a common debtor prevents marshaling. The potential for prejudice to Mr. Johnson and his creditors, as a Chapter 13 debtor, is at best unclear. It is the court's understanding that Mr. Johnson has equity in the Uriah property. Courts have declined to apply the doctrine of marshaling where the rights of third parties having equal equity would be prejudiced. *Meyer*, 375 U.S. at 237. Moreover, it is unclear what prejudice, if any, the Bank might suffer in attempting to collect its claims from Mr. Johnson or the Uriah property. The doctrine of marshaling is founded in equity and is "applied only when it can be equitably fashioned as to all of the parties." *Id*. In this case, it cannot.

THEREFORE IT IS ORDERED

1. The Trustee's objection to the Bank's Claim Number 24 is SUSTAINED IN PART and DENIED IN PART;

2. The Bank's Claim Number 24 is REDUCED AND ALLOWED to the amount already paid plus $4,208 in interest which is secured by the proceeds of the sales of the Jackson, Bypass, and Range properties;

3. The Bank is entitled to an unsecured nonpriority claim of $8,438.34, representing the remaining balance on its Claim No. 24;

10

4.  The Trustee's objection to the Bank's Claim Number 25 is OVERRULED;

5.  The Bank's Claim Number 25 is ALLOWED AS FILED and is secured by the proceeds of the sales of the Jackson, Bypass, and Range properties along with $7,500 in attorney's fees incurred by the Bank in this matter.


Dated:    September 28, 2012


_Margaret A. Mahoney_
MARGARET A. MAHONEY
CHIEF U.S. BANKRUPTCY JUDGE

11